IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Johnny Tahja Jean (05661-104), ) | |
| ) | |
| Petitioner, ) | |
| ) | Case No. 21 C 50020 |
| v. ) | |
| ) | Hon. Iain D. Johnston |
| Andrew Ciolli, Warden, ) | |
| USP Thompson, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

Following a bench trial, the district court found Petitioner Johnny Jean guilty of being a felon in possession of a firearm, *see* 18 U.S.C. § 922(g)(1), and imposed an enhanced sentence under the Armed Career Criminal Act (ACCA), *see* 18 U.S.C. § 924(e)(1). Jean now files this collateral attack under 28 U.S.C. § 2241, via the saving clause of 28 U.S.C. § 2255(e), contending *Rehaif v. United States*, 139 S. Ct. 2191 (2019), invalidates both his conviction and sentence and *Borden v. United States*, 141 S. Ct. 1817 (2021), invalidates his sentence enhancement. For the reasons stated below, Jean's petition is denied.

## BACKGROUND

Before Jean's § 922(g) felon-in-possession-of-a-firearm conviction, he had been convicted of multiple offenses. Those convictions included the following six felonies: (1) and (2) two separate offenses, both involving burglary of an unoccupied conveyance and grand theft; (3) strong arm robbery; (4) battery of a law enforcement officer and resisting an officer with violence; (5) grand theft and resisting an officer with violence; and (6) aggravated assault and attempted escape. (CVR 15-1, ¶¶ 22–27.[1]) For these convictions, a Florida state court imposed six concurrent

---

[1] The Court adopts Respondent's record citation system. Unless the context provides otherwise, citations to docket items in Jean's federal criminal case, *United States v. Jean*, Case No. 14-CR-20769 (S.D. Fla. 2014), are introduced

sentences of 24 months' imprisonment and three years' probation. (*Id.*) Jean later had his probation revoked and was sentenced to a five-year prison term. (*Id.*) Although Jean was 15–16 years old at the time he committed these offenses, he was convicted and sentenced as an adult for all of them. (*Id.*)

At his bench trial for his felon-in-possession offense, Jean and the government stipulated (and entered as an exhibit) that he had been previously convicted of a crime punishable by imprisonment for a term of more than one year—that is to say a felony offense. (CVR 14-2, p. 96; R. 92, pp. 51–52.) The signed stipulation added that Jean had not received a pardon, applied for clemency, or otherwise restored his right to own, possess, or use firearms or ammunition. (*Id.*) Without objection, the government also entered a video recording and transcript of Jean's post-arrest interview in which he admitted to his convicted felon status. (CVR 14-2. pp. 79–87; R. 92, pp. 30–32.[2])

In advance of sentencing, Jean's probation officer submitted a Presentence Investigation Report (PSR), summarizing Jean's criminal history to include the above-six state felony convictions, as well as other offenses. (CVR 15-1.) Presented with that history, the probation officer concluded that Jean was an armed career criminal who qualified for an enhanced sentence under § 924(e). (*Id.* at ¶ 31.) Jean objected to the PSR, contesting his designated status as an armed career criminal, his 4-level increase, and, by extension of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the government's failure to prove beyond a reasonable doubt his predicate felony offenses. (R. 94, pp. 2–7.) But as Respondent points out, Jean did not challenge the existence of his six state

---

by "R.," and citations to docket items in this § 2241 proceeding are introduced by "CVR."

[2] Respondent cites to the trial transcript where a video recording of Jean's post-arrest interview was played on the record. (R. 92, pp. 30–32.) Although the recording was not transcribed into the trial record, it appears a copy of the transcription was entered as a trial exhibit. Respondent has provided a copy of the transcription, portions of which have been redacted, (CVR 14-2, pp. 79–87.)

felony convictions or his post-arrest interview admission that he knew he was a convicted felon. (CVR 14, pp. 2–4.) At sentencing, the court agreed Jean's predicate felonies qualified him as an armed career criminal and sentenced him under the ACCA; yet varied downward, below the guidelines, and sentenced him to a mandatory minimum of 15 years' imprisonment followed by five years of supervised release. (R. 99; R. 105, pp. 4, 22 –24.)

Jean appealed his conviction and sentence, but the Eleventh Circuit Court of Appeals affirmed the trial court judgment and the U.S. Supreme Court denied certiorari review. *United States v. Jean*, 636 F. App'x 767 (11th Cir.), *cert. denied*, 578 U.S. 1016 (2016). Jean proceeded with three collateral attacks under 28 U.S.C. § 2255 to vacate or set aside his sentence. His first § 2255 motion was denied on the merits after raising nine separate claims. *See Jean v. United States*, Case No. 16 CV 22412, R. 16 (S.D. Fla. 2016). The Eleventh Circuit denied him a certificate of appealability for failing to make a substantial showing of the denial of a constitutional right. *Id.* at R. 23; 28 U.S.C. § 2253(c). Jean's second § 2255 motion was dismissed for lack of jurisdiction as an unauthorized second or successive § 2255 motion because he failed to obtain permission from the Eleventh Circuit to file it. *See Jean v. United States*, Case No. 18 CV 23140, R. 30 (S.D. Fla. 2018); 28 U.S.C. § 2255(h). In Jean's third § 2255 motion, he contended that *Rehaif v. United States* invalidates his conviction and sentence. *See Jean v. United States*, Case No. 20 CV 22174, R. 1 (S.D. Fla. 2020). Before dismissing the motion, again for lack of jurisdiction as an unauthorized successive motion, the district court explained that because the Eleventh Circuit does not interpret *Rehaif* as creating a "new rule of constitutional law," by extension it cannot form the basis of a successive § 2255 motion under § 2255(h). *Jean v. United States*, Case No. 20-CV-22174, 2020 WL 4194157, at *1 (S.D. Fla. 2020), citing *United States v. Finley*, 805 F. App'x 823, 826 (11th Cir. 2020); *In re Price*, 964 F.3d 1045, 1049 (11th Cir. 2020).

In his § 2241 petition,[3] Jean again contends that prosecutors failed to prove all elements of a felon-in-possession offense, § 922(g), based on the U.S. Supreme Court's 2019 decision in *Rehaif v. United States*. In making that argument, Jean does not contest his criminal history. Jean's claim is instead that prosecutors had to prove (but did not) that he knew of his convicted felon status when he possessed the firearm. Jean also contends that none of his predicate felony convictions qualify to designate him as an armed career criminal under the ACCA, § 924(e)(1), based on the U.S. Supreme Court's 2021 decision in *Borden v. United States*. Jean argues that all his ACCA predicate felonies criminalize reckless or even negligent conduct. On that view, his predicate felonies fall below the required *mens rea* threshold of purposeful or knowing conduct to be considered ACCA enhancing convictions. Neither claim warrants § 2241 habeas relief.

## ANALYSIS

The trailhead for a federal prisoner challenging his conviction and sentence starts at a direct appeal. From there, the most traveled path for collateral attacks is a motion under § 2255. *Mangine v. Withers*, 39 F.4th 443, 447 (7th Cir. 2022) ("Indeed, in the great majority of cases, § 2255 is the exclusive postconviction remedy for a federal prisoner.") (cleaned up). That trail to relief, though, requires careful footing: a federal prisoner is allowed only one motion to vacate or set aside, which must be brought within one year after his direct review concluded. § 2255(f)(1). A federal prisoner may file a second or successive § 2255 motion if it points to new evidence that proves his factual innocence or to a new constitutional rule that the Supreme Court made retroactive to cases on collateral review. § 2255(h).

---

[3] Jean is currently incarcerated at USP Atwater (Atwater, California), even though he was at USP Thompson (sited in the Western Division) when he filed this § 2241 petition. And so, this Court was the proper venue to receive his habeas petition. *See al–Marri v. Rumsfeld*, 360 F.3d 707, 712 (7th Cir. 2004). As for his later transfer to another federal facility, that does not affect this Court's jurisdiction. *In re Hall*, 988 F.3d 376, 378 (7th Cir. 2021).

An alternate route to collateral relief may be open under the saving clause of § 2255(e) to access relief under the general habeas statute of § 2241. *Mangine*, 39 F.4th at 447. This requires a federal prisoner to show that § 2255 "is inadequate or ineffective to test the legality of his detention." § 2255(e). The boundaries of the "inadequate or ineffective" provision are defined differently among the circuits, and which circuit's law applies to this case—the circuit of conviction or the circuit of detention at the time the § 2241 petition is filed—remains unsettled. *Chazen v. Marske*, 938 F.3d 851, 865 (7th Cir. 2019) (Barrett, J., concurring). Yet the circuits' divergent tests may soon be resolved depending on how the U.S. Supreme Court decides *Jones v. Hendrix*, 8 F.4th 683 (8th Cir. 2021), *cert. granted*, Case No. 21-857, ⎯⎯ U.S. ⎯⎯, 142 S. Ct. 2706 (U.S. 2022). In any event, this Court can proceed because Jean's arguments are meritless.

The Seventh Circuit's saving clause approach "requires several showings: the claim rests on a new decision interpreting a statute; the claim could not reasonably have been raised in earlier proceedings because, for instance, circuit precedent foreclosed it; the new interpretation applies retroactively on collateral review; and the error amounts to a miscarriage of justice." *Johnson v. Keyes*, 2022 WL 17075973, at *1 (7th Cir. Nov. 18, 2022) (distilling the *Davenport* test); *In re Davenport*, 147 F.3d 605 (7th Cir. 1998).

In stark contrast, the Eleventh Circuit (Jean's circuit of conviction) asks "whether the prisoner would have been permitted to bring [his] claim in a motion to vacate." *McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076, 1086–87 (11th Cir. 2017). A federal prisoner would have been permitted to do so if § 2255 afforded him "a meaningful opportunity to test his claim." *Id.* at 1087. An opportunity to present a claim is still meaningful, and thus adequate "to challenge the legality of his sentence," even if "a court might reject a prisoner's argument." *Id.* at 1086 (saving clause targets "access to a procedure" not existing caselaw). After all, a "test often

failed can nevertheless be an adequate test" even when facing the cliff wall of adverse circuit precedent. *Id*. at 1087.

### A. Jean's *Rehaif* Argument

Jean first contends that his § 922(g) conviction is invalid because the government did not prove that he knew of his convicted felon status. *Rehaif* holds that, to convict under § 922(g), the government must prove not only that the defendant knowingly possessed a firearm, but also that the defendant *knew* he belonged to a group of persons prohibited from possessing a firearm. 139 S. Ct. at 2200 (emphasis added).

As Respondent points out, Jean cannot meet the Eleventh Circuit's saving clause approach. He had (and missed) his opportunity to assert a cognizable *Rehaif*-like challenge on direct appeal and in his first § 2255 motion. Despite Eleventh Circuit precedent that might have been against him, he "had an opportunity to bring and test his claim"—so in the very least "the remedy by motion [was] adequate and effective." *McCarthan*, 851 F.3d at 1089.

Jean fares no better under the Seventh Circuit's approach. He claims that, because the Supreme Court decided *Rehaif* after his conviction, § 2255 was an inadequate and ineffective remedy. As just alluded to, whether Jean was truly foreclosed from raising a *Rehaif*-like claim is debatable. Rehaif argued against (and overcame) circuit precedent, *see United States v. Jackson*, 120 F.3d 1226 (11th Cir. 1997), to require proof that he knew he belonged to the relevant category of persons barred from possessing a firearm for a § 922(g) offense. *Rehaif*, 139 S. Ct. at 2200 (reversing *United States v. Rehaif*, 888 F.3d 1138 (11th Cir. 2018)). Still, the Court does not need to parse this logic. Respondent disputes only the miscarriage-of-justice element under the *Davenport* test.

6

Jean cannot show a miscarriage of justice because he has revealed no evidence that he is actually innocent of § 922(g). *E.g.*, *Santiago v. Streeval*, 36 F.4th 700, 706 (7th Cir. 2022) (considering actual innocence to establish a miscarriage of justice). A federal prisoner is actually innocent if "more likely than not . . . no reasonable juror would find him guilty beyond a reasonable doubt." *Santiago*, 36 F.4th at 707 (borrowing § 2254 or § 2255's actual innocence standard for collateral challenges under § 2241), quoting *House v. Bell*, 547 U.S. 518, 538 (2006). Or to phrase that standard in this context, he must point to reliable evidence that shows he did not belong to a group previously "convicted in any court of, a crime punishable by imprisonment for a term exceeding one year." § 922(g)(1); *see Santiago*, 36 F.4th at 707. And this uphill climb is steep: "If a person is a felon, he ordinarily knows he is a felon." *Greer v. United States*, 141 S. Ct. 2090, 2097 (2021) (finding no plain error on direct appeal because it was not reasonably probable the defendant would have been acquitted absent a *Rehaif* error).

Jean has offered no evidence to establish actual innocence. Jean's criminal history, instead, confirms the exact opposite is true. Supposing that *Rehaif* applied at the time of his criminal proceedings, no reasonable trier of fact could acquit him of a § 922(g) offense. Even if the government had been required to prove Jean's knowledge of his convicted felon status, the government did so. *See Greer*, 141 S. Ct. at 2098 ("At trial, Greer stipulated to the fact that he was a felon. And Gary admitted that he was a felon when he pled guilty."). Indeed, Jean stipulated that he had been previously convicted of at least one crime punishable for more than one year. (CVR 14-2, p. 96; R. 92, pp. 51–52.) And he admitted to his convicted felon status during a post-arrest interview. (CVR 14-2. pp. 79–87; R. 92, pp. 30–32.) Both the signed stipulation and the post-arrest interview were entered (without objection) as trial exhibits. (R. 92, pp. 30–32; 51–52.) On top of that, the PSR listed six state felony convictions. Those carried concurrent sentences of 24 months

7

in prison. (CVR 15-1, ¶¶ 22–27.) When Jean violated parole, he was sentenced to another five years in prison. There is no plausible basis for the Court to conclude a miscarriage of justice occurred. *E.g.*, *United States v. Maez*, 960 F.3d 949, 965–66 (7th Cir. 2020) (finding no error where defendant stipulated to his convicted felon status and felonies listed in his PSR would leave "no doubt that a jury permitted to hear such evidence would find Battiste knew his felon status"); *United States v. Dowthard*, 948 F.3d 814, 818 (7th Cir. 2020) (serving more than a year in prison would "severely hamper an assertion that he was ignorant of the fact that this crime was punishable by more than a year of imprisonment").

### B. Jean's *Borden* Argument

Next Jean contends that his six state felony convictions do not qualify as ACCA predicate offenses because each felony can be committed with a *mens rea* of recklessness. *Borden* holds that a crime that can be committed with a *mens rea* of recklessness (or negligence) does not qualify as a violent felony to enhance a sentence under § 924(e)(1), when a defendant has been convicted of three violent felonies. 141 S. Ct. at, 1834. Rather, the ACCA's element clause "sets out a *mens rea* requirement—of purposeful or knowing conduct." *Id.* at 1828. But Jean did not need *Borden*.

The Eleventh Circuit explained why under existing precedent:

> In *Leocal*, the Supreme Court made clear that crimes of violence must be volitional, but also repeatedly emphasized that such crimes cannot be "accidental." *See id.* at 8–10, 125 S.Ct. 377. Following *Leocal*'s reasoning, we held that "a conviction predicated on a *mens rea* of recklessness does not satisfy the 'use of physical force' requirement." *United States v. Palomino Garcia*, 606 F.3d 1317, 1336 (11th Cir. 2010). Rather, for a conviction to qualify as a predicate crime of violence under the elements clause, it must require "the *intentional* use of force." *Id.* Although *Palomino Garcia*'s holding addressed Sentencing Guideline § 2L1.2's elements clause, it compels the conclusion that the ACCA's elements clause likewise requires the intentional use of force. *See United States v. Green*, 873 F.3d 846, 869 (11th Cir. 2017) (determining that a § 2L1.2 case "compels a conclusion that [the same] statute likewise constitutes a violent felony under the elements clause of the ACCA"); *United States v. Vail-Bailon*, 868 F.3d 1293, 1298 n.8 (11th Cir. 2017) ("The elements clause of the ACCA is identical to the elements clause of § 2L1.2.

8

> Cases construing the ACCA's elements clause are thus relevant to our inquiry here.").

*United States v. Moss*, 920 F.3d 752, 756–57 (11th Cir. 2019). As of 2010, prevailing case law of the Eleventh Circuit was consistent with Jean's *Borden*-like challenge to his ACCA predicate convictions disputing the required *mens rea* to commit any one of those offenses. *See Palomino Garcia*, 606 F.3d at 1336. Jean could have asserted his *Borden*-like claim at trial, on direct appeal, and, at the latest, on his first § 2255 motion. Failing to do just that, he cannot meet the Eleventh and Seventh Circuits' § 2255(e) saving clause standards. *See McCarthan*, 851 F.3d at 1099–100 (precluding § 2241 relief because McCarthan "'was free to bring'" his claim in a § 2255 motion); *see also Montana v. Cross*, 829 F.3d 775, 784–85 (7th Cir. 2016) (precluding § 2241 relief because the "state of the law" left "an opening for the argument Mr. Montana now raises").

For all these reasons, Jean cannot obtain collateral relief because he fails to properly invoke § 2255(e) under either the Seventh or Eleventh Circuit's saving clause standard to bring a § 2241 petition raising his *Rehaif* and *Borden* claims. And so, his § 2241 habeas corpus petition is denied.[4]

## NOTICE OF APPEAL RIGHTS

Jean is advised that this is a final decision ending his case in this Court. If Jean wishes to appeal, he must file a notice of appeal with this Court within sixty days of the entry of judgment.

---

[4] Some time after the Court entered the briefing schedule on Jean's § 2241 petition, but before Respondent responded, Jean filed a document (CVR 8), contending that his ACCA predicate convictions do not qualify as violent felonies because he was a juvenile at the time. The Court did not seek additional briefing on this claim as it is meritless. First, he claims an intervening change in law supports his contention. That intervening change in law comes from the Fifth Circuit Court of Appeals, *United States v. Flores*, 922 F3d 681 (5th Cir. 2019). Contrary to Flores, who was adjudicated a juvenile delinquent (a central fact of the case), *see Flores*, 922 F.3d at 683, Jean was convicted and sentenced as an adult, *see* CVR 15-1, ¶¶ 22–27. *Flores*, thus, does not help Jean even if it was adopted by the Seventh Circuit. Second, Jean has already raised this same argument in his original § 2255 motion. *See Jean v. Unites States*, Case No. 16 CV 22412 (S.D. Fla. 2016). The district court rejected Jean's challenge to his adult criminal convictions as ACCA predicate felonies for the fact that he was a juvenile at the time. *Id.* at R. 10, 16. And Jean abandoned this argument on appeal. *Id.* at R. 15, 23. A prisoner cannot relitigate matters that were resolved (or could have been raised) on his direct appeal or § 2255 proceeding in a § 2241 motion unless the law changed after those proceedings. *Roundtree v. Krueger*, 910 F.3d 312, 313 (7th Cir. 2018). Jean's argument does not sway the Court's saving clause analysis.

*See* Fed. R. App. P. 4(a)(1)(B)(iii). Jean need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if Jean wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

## CONCLUSION

This Court denies Jean's 28 U.S.C. § 2241 petition, as well as any pending motion. The Clerk of this Court is directed to enter a Fed. R. Civ. P. 58 against Jean.

Date: December 15, 2022    By: _____
                                                             Iain D. Johnston
                                                           United States District Judge